UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| TYSON KEPLINGER, | ) |
|                   Plaintiff, | ) |
|               v. | ) No. 2:19-cv-00410-JRS-MJD |
| KAYLA MCDONALD, | ) |
|                   Defendant. | ) |

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT
AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Tyson Keplinger, an Indiana inmate, brought this action under 42 U.S.C. § 1983 alleging that the defendant was deliberately indifferent to his serious medical condition in violation of his Eighth Amendment rights. Both parties have moved for summary judgment. Dkt. 107; dkt. 112. For the reasons discussed in this Order, both motions are **denied.**

**I.
Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

1

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.
## Factual Background Including Material Facts in Dispute

Mr. Keplinger has been incarcerated at Wabash Valley Correctional Facility's Secured Housing Unit (SHU) since July 2017. Keplinger Deposition, Dkt. 114-3 at 7. In December 2017, he spent 10 days in an outside hospital and was diagnosed with late-onset Type 1 Diabetes. *Id*. at

19-20. The physician who diagnosed him warned him that this type of Diabetes would be "almost impossible" to control in a prison setting. *Id*. at 20.

Nurses administer insulin to Mr. Keplinger three times per day. He also receives one dose of long-acting insulin every afternoon. *Id*. at 20-21. He does not experience the usual symptoms of hypoglycemia (low blood sugar) until his blood sugar is very low. *Id*. at 22-23.

On May 20, 2019, Mr. Keplinger was escorted from his single-man cell in segregation to the segregation unit's medical exam room to check his blood sugar. Dkt. 114-2 at 1-2. Mr. Keplinger is often hypoglycemic, but he let Nurse McDonald know that what he was experiencing was not normal and that he thought something was wrong. Dkt. 114-3 at 14. Nurse McDonald checked his blood sugar told him it was 45 milligrams per deciliter (mg/dL). *Id*. at 24. He told her it must be lower than that given how he was feeling. *Id*. She gave him two glucose tablets and sent him back to his cell. *Id*. She said she would re-check his blood sugar in fifteen minutes. Dkt. 108-1 at 54. Mr. Keplinger testified that he told Nurse McDonald that glucose tablets did not work for him. Dkt. 109 at 3. Nurse McDonald testified that Mr. Keplinger told her that he would be okay after receiving the glucose tablets. McDonald Affidavit, dkt. 114-1 at 3.

Usually, when Mr. Keplinger went to the unit's medical exam room to have is blood sugar checked, he would remain in that room, sit in a chair just outside the room, or stay in the adjoining holding cell until medical staff confirmed that his blood sugar had increased to a safe level. Dkt. 114-3 at 19, 27, 31-32. Nurses usually gave him glucose gel, or other interventions, because they knew glucose tablets did not work for him. *Id*. at 29.

Once in his cell, Mr. Keplinger had no emergency call button, and no one could hear him yell. Dkt. 114-3 at 19, 45. Video evidence shows that he was out of his cell for the blood sugar check for approximately three minutes. He returned to his cell at approximately 10:32 am. No one

came to check on him until correctional officers arrived approximately 34 minutes later.[1] Dkt. 129. By that time, he was unresponsive. Dkt. 108-1 at 54.[2]

The correctional officers went to bring medical staff to Mr. Keplinger's cell. Nurse McDonald testified that she administered a glucagon injection. Dkt. 114-1 at 3.[3] Mr. Keplinger was transported on a stretcher to the infirmary. Medical staff there conducted an EKG, administered oxygen and two injections, and kept him for observation. *Id.* at 36-37. Dr. Byrd diagnosed Mr. Keplinger with hypoglycemia and acute hyperventilation syndrome. Dkt. 108-1 at 56.

The parties disagree about other material facts. Ms. McDonald testified that she had given Mr. Keplinger glucose tablets in the past without issue, but Mr. Keplinger testified that medical

---

[1] Despite the availability of video evidence which shows that Nurse McDonald did not reassess Mr. Keplinger for at least 34 minutes, Nurse McDonald's brief and affidavit state that she told Mr. Keplinger she would recheck his blood sugar in 15 minutes, and that she did so "a short time later." Dkt. 114-1 at 2-3. The length of time between the first and second check of Mr. Keplinger's blood sugar level is a crucial fact in this case and can be easily and precisely determined. Nurse McDonald's failure to include the precise time calls the accuracy of her remaining testimony into doubt. Furthermore, when Mr. Keplinger submitted a health care request form as part of the grievance process, Amy Wright responded that Mr. Keplinger's blood sugar had been rechecked "within 15 minutes." Dkt. 108-1 at 198. This is patently false and indicates that the accuracy of the medical records should be taken with a grain of salt. Nurse McDonald disputes that video evidence definitely establishes that Mr. Keplinger was alone in his cell from 10:32 am to 11:06 am because there is a several minute gap between the two relevant video clips. However, the Court is aware that prison security cameras are often motion-activated and that appears to be the case in this instance. There is no reason to think that someone checked on Mr. Keplinger between 10:32 am and 11:06 am and the interaction failed to be preserved on video.
[2] This medical record, prepared by Nurse McDonald, also states that custody staff went to retrieve Mr. Keplinger from his cell to recheck his blood sugar approximately 15 minutes after he was given the glucose tabs, but the video evidence demonstrates that this approximation is incorrect, and that Mr. Keplinger was alone in his cell for at least 34 minutes.
[3] Mr. Keplinger testified that it was Nurse Firestone who injected him with glucagon after Nurse McDonald suggested they wait to administer the shot. Dkt. 114-3 at 34-35. But this testimony was based on hearsay statements by Nurse Firestone rather than Mr. Keplinger's personal knowledge. The Court must disregard inadmissible hearsay and rely only on admissible evidence. *Cairel v. Alderen*, 821 F.3d 823, 830 (7th Cir. 2016).

staff were aware that glucose tablets did not work for him and that Ms. McDonald had never administered him glucose tablets before May 20, 2019. McDonald Affidavit, dkt. 114-1 at 3; Keplinger Affidavit, dkt. 109 at 23; Keplinger Deposition, dkt. 114-3 at 29.

Nurse McDonald testified that she followed official policies when she sent Mr. Keplinger back to his cell without first re-checking his blood sugar. Dkt. 114-1 at 4. She does not provide any policies or descriptions of them. Mr. Keplinger has produced a decision matrix for the treatment of insulin shock that appears to be a policy of Indiana Department of Correction or its contracted medical provider, but Nurse McDonald disputes that Mr. Keplinger was experiencing insulin shock when she treated him. Dkt. 108-1 at 88; dkt. 116 at 12.

Mr. Keplinger has also produced a health care request form in which he asks for the proper procedure or policy for responding to a diabetic with blood sugar below 50. Nurse Cuff responds: "You must be given glucose tabs or glucagon (if necessary) and must stay in med room until accucheck is 60 or above." Dkt. 108-1 at 80. Another medical record states that Mr. Keplinger was educated that he must stay in the presence of medical staff until his blood sugar is measured at 60 or higher. Dkt. 108-1 at 61. Nurse McDonald's affidavit states that she returned Mr. Keplinger to his cell rather than keep him in the med room because she was the only nurse in the segregation unit and had to distribute medications to other inmates. Dkt. 114-1 at 3.

Mr. Keplinger asserts that he lost consciousness, dkt. 110 at 10, but Nurse McDonald disputes this as well, dkt. 116 at 9. After Mr. Keplinger was released from the infirmary, he was

tired and groggy. He had a bad headache and some cramping, both of which continued to bother him for over 30 days. Dkt 114-3 at 38; dkt. 108-1 at 62.

## III.
## Analysis

Mr. Keplinger's claim against Nurse McDonald is that she was deliberately indifferent to his low blood sugar on May 20, 2019. Because Mr. Keplinger is a convicted prisoner, his medical treatment is evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

The Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc).

"A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles,* 771 F.3d at 409. The "subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

The Court defers to the treatment decisions made by medical staff "unless no minimally competent professional would have so responded under those circumstances" because "there is no single proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019)

(internal quotation marks and citations omitted).

"We may assume that diabetes is a serious medical condition. Untreated, diabetes can lead to a fatal coma or long-term complications like kidney disease and stroke." *Miller v. Lemke*, 711 F. App'x 354, 355 (7th Cir. 2018) (citing *Ortiz v. City of Chicago*, 656 F.3d 523, 527 (7th Cir. 2011); *Complications*, AMERICAN DIABETES ASSOCIATION, http://diabetes.org/diabetes/complications (last visited Dec. 14, 2021)).

More specifically, the Center for Disease Control and Prevention considers a blood sugar level below 55 mg/dL to be severely low and best treated with a glucagon injection administered by someone other than the person experiencing the severely low blood sugar. Diabetes, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/diabetes/basics/low-blood-sugar-treatment.html (last visited Dec. 9, 2021).

Mr. Keplinger was experiencing a serious medical condition when Nurse McDonald sent him back to his cell on May 20, 2019. Material disputes of fact remain as to whether Nurse McDonald was deliberately indifferent to that condition. These disputes include:

- whether Nurse McDonald's actions were based on sound medical judgment;
- whether she was aware that glucose tablets were not effective in treating Mr. Keplinger's hypoglycemia; and
- whether Mr. Keplinger experienced insulin shock or severe hypoglycemia.

For these reasons, neither party is entitled to summary judgment.

### IV.
### Conclusion

For these reasons, the plaintiff's motion for summary judgment, dkt. [107], and the defendant's motion for summary judgment, dkt. [112], are **denied.**

The plaintiff's motion to reconsider appointment of counsel, dkt. [125], is **granted to the extent that** the Court will attempt to recruit counsel to represent him through final judgment. After counsel is appointed, the Magistrate Judge is requested to set a status conference to discuss what further development is necessary for trial and if the case is amenable to settlement.

The plaintiff's motion for the appointment of an expert, dkt. [126], is **denied without prejudice** to refiling by counsel if appropriate.

**IT IS SO ORDERED.**

Date: 12/15/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

TYSON KEPLINGER
128194
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Rachel D. Johnson
KATZ  KORIN CUNNINGHAM, P.C.
rjohnson@kkclegal.com

Magistrate Judge Mark J. Dinsmore